UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| APPLIED RESEARCH INVESTMENTS, LLC,<br><br>Plaintiff,<br><br>-against-<br><br>MARK LIN, ALPHA LAB ASSET MANAGEMENT INC.<br><br>Defendants. | Case No.:<br><br>**COMPLAINT** |

Plaintiff, Applied Research Investments, LLC ("Plaintiff" or "Applied Research"), by and through its attorneys, Davidoff Hutcher & Citron, LLP, brings the following Complaint against Defendants Mark Lin ("Lin"), and Alpha Lab Asset Management, Inc. ("Alpha," and collectively with Lin referred to as "Defendants"). The allegations of the Complaint are based on the knowledge of Plaintiff, and on information and belief, including the investigation of counsel and review of publicly available information.

**NATURE OF THE ACTION**

1. This action arises from Lin's breaches of his various duties, theft and misappropriation of Applied Research secrets, and Alpha's aiding and abetting of such conduct, all of which was concocted to further a scheme to illegally rob Applied Research of clients and corporate opportunities.

2. Applied Research is an investment firm with a focused strategy of investing in worldwide and regional companies with sustainable business models in concentrated long-only funds. Applied Research has global reach, and services both institutional investors and qualified private clients. Applied Research has developed its proprietary investment strategies through years of experience, and at significant expense. The disciplined investment process that Applied

Research had developed was a closely guarded secret, known only to a few, and was critical to the Company's development and retention of client relationships.

3. Mark Lin served as Chief Investment Officer of Applied Research from April 3, 2017 until January 2022. In addition, Lin served as Chief Compliance Officer of Applied Research's Canadian affiliate (Applied Research Investment Advisors Corp.). As such, Lin was privy to the Company's most closely protected secret, proprietary, and confidential information. He held fiduciary duties to the Company as well as duties of loyalty, all of which he abrogated in a breathtaking scheme to procure the Company's secrets for his own, personal benefit and that of Alpha, a new company that Lin formed for the purpose of carrying out these misdeeds.

4. In early 2022, Lin suddenly resigned from the Company. Before doing so (and immediately after), he systematically stole countless confidential and proprietary documents and information in order to misuse that information to enrich himself and Alpha by leveraging the stolen information to improperly solicit the majority of the Company's existing clients to Alpha, and to procure other corporate opportunities that rightfully belonged to Applied Research. As such Applied Research has suffered significant monetary damages.

**PARTIES**

5. Plaintiff Applied Research is a Delaware Limited Liability Company, that is headquartered at 641 Lexington Avenue, 13th Floor, New York, NY 10022.

6. Upon information and belief, Defendant Mark Lin is a citizen of Canada, and resides in Montreal, Quebec, Canada.

7. Lin is a former employee and officer of Applied Research, and current owner and CEO of Alpha.

8. Defendant Alpha is a corporation organized under the laws of Canada, and is headquartered at 8 Chemin d'Auteuil, Candiac, QC J5R 2E1, Canada

## JURISDICTION AND VENUE

9. Defendant Lin has availed himself to personal jurisdiction in New York by conducting business in the State of New York through his employment as Chief Investment Officer of Applied Research, which maintains its corporate headquarters in New York County.

10. Defendant Alpha Lab has availed itself to personal jurisdiction in New York by conducting business in the State of New York through repeatedly and systematically soliciting investors and clients within the State of New York, including New York public pensions funds, which were Applied Research clients and which which were improperly solicited within the State of New York.

11. This Court has subject matter jurisdiction of this action under 28 U.S.C. § 1332 because the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and the case is between citizens of New York and citizens or subjects of a foreign state.

12. This Court also has subject matter jurisdiction of this action under 28 U.S.C. § 1331 because certain of the claims asserted arise under the laws of the United States.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claim occurred or a substantial part of the property that is the subject of the action is situated in this district.

## FACTUAL ALLEGATIONS

### A. Lin Agreements and Duties

24. As Chief Investment Officer of Applied Research, Lin was bound by agreements and policies – which he acknowledged – and which prohibited or restricted certain conduct while

at the company as well as after his departure. Applied Research was and is the intended beneficiary of these policies.

25. Lin acknowledged receipt of the Applied Research's Employee Handbook ("Handbook") on multiple occasions, and most recently on January 29, 2021 (less than a year before his departure). Specifically, Lin agreed to the following:

> Confidential Information in all forms may only be kept on company premises and/or systems. All confidential information relating to AR business activities is to be used strictly for the Company's affairs. Any reproduction of such information for a purpose other than the Company's affairs is strictly forbidden without a written permission from AR's CEO.

26. The Handbook went on to state that this policy as to confidential information is "of the utmost importance for our company in its efforts to fulfill its legal obligations and consequently preserving its reputation. For this reason, an employee who is found guilty of having breached this policy may be subject to disciplinary sanctions that could result in his or her employment with the firm being terminated."

27. The Company also maintained strong non-disclosure policies, which were annexed to the Handbook. Specifically, this policy defined "Confidential Information" and "Proprietary Information" as "all information or material that has or could have commercial value or other utility in the business in which you are engaged." Each Company employee was warned that the disclosure of Confidential Information" "would be highly detrimental to the best interests of the Company and its clients."

28. Under the non-disclosure policy contained in the Handbook, Lin was bound "not to disclose at any time, either during or after your employment with the Company, such confidential information or any part thereof, or any other information which in good faith and good conscience ought to be treated as confidential relating to the Company, its employees, or clients, to any third

person, and not to make improper use, either directly or indirectly, of such confidential information."

29. Applied Research further advised all employees (including Lin) that: "All documents, records, software programs, working papers, notes, memoranda, files and other records of or containers of confidential information made or compiled by you at any time or made available to you at any time during your employment with the Company, including copies thereof, shall be and shall remain the property of the Company and belong solely to it, and shall be held by you solely for the benefit of the Company, and shall be delivered to the Company upon cessation of your employment for any reason, or at any other time on request by the Company."

30. These non-disclosure policies were appended to the Handbook, and as such applied to every employee of Applied Research, including Lin. As an additional measure, and demonstrating the importance of non-disclosure of company information, Applied Research had a policy of requiring its employees to separately acknowledge that specific portion of the Handbook. Tellingly, Lin refused to sign this acknowledgement in 2021, claiming that he was the Chief Compliance Officer of the Applied Research's Canadian affiliate, and he had not had an opportunity to review the policy. This refusal was in furtherance of Lin's scheme (which he had already hatched) to utilize company confidential information to improperly solicit Applied Research clients. Nonetheless, Lin's signature was not necessary to bind him to these requirements, and in fact his refusal is tantamount to knowledge of and intent to evade this important company policy.

31. Regardless of whether or not he used confidential information, Lin was also not permitted to solicit company clients. In the Handbook, Lin further agreed as follows:

> For a period of twenty-four (24) months following the termination of your employment, for any reason whatsoever, you shall not, directly or indirectly, poach, solicit, attempt to

> poach or attempt to solicit any actual or potential client or distributor (hereinafter referred to collectively as "Any Actual or Potential Client of the Company"), wherever situated, for the purpose of offering, selling, or providing products or services which are similar to the products or services that are purchased, offered or sold by the Company at the time that your employment is terminated (hereinafter individually or collectively referred to as the "Products or Services Offered or Sold by the Company." For the purposes of this provision the expression "Any Actual or Potential Client of the Company" shall refer to (i) any actual or potential client of the Company that you had contact within the performance of your services for the Company; and or (ii) any actual or potential client of the Company for whom you conducted research or analysis on behalf of the Company; within the twenty-four (24) months immediately preceding the termination of your employment with the Company.

32. Employees' adherence to these covenants, agreements, and policies were crucial to Applied Research's success, and to Lin's agreement to be employed and paid by the company. Applied Research's action in offering Lin to serve as Chief Investment Officer was contingent upon the material commitment that Lin would be loyal to the company, and would work to achieve its business goals and contribute to the success of the Applied Research entities.

33. As an employee and Chief Investment Officer of the company, Lin agreed to maintain loyalty to Applied Research, not take personal advantage of the company's corporate opportunities and preserve the confidentiality of its confidential information and trade secrets. In addition, Lin underwent cybersecurity training, through which he was aware that he was forbidden from placing any client information on electronic storage devices other than Applied Research servers. As a leader on the company's Investment Trading Committee and a member of the Compliance and Operations and Risk Committee, Lin was fully aware of the importance of safeguarding company property within Applied Research systems.

**B. <u>The Applied Research Confidential and Proprietary Information</u>**

34. As a provider of investment services to institutional investors and accredited private investors, Applied Research has developed a wealth of proprietary investment strategies and

processes, as well as specialized knowledge of its investment space. All of this confidential information is critical to the company's success and to maintaining its growth trajectory.

35. Applied Research has also developed its own valuable network of clients and referral sources. This confidential list was developed as the result of an expenditure of considerable company resources, both financial and in personnel time.

36. Similarly, Applied Research has developed and documented methodologies, processes, and strategies pertaining to its investment management products and services that it offers. Applied Research has expended significant resources in developing these confidential and proprietary information and materials, which constitute extremely valuable assets of the company.

37. Access to Applied Research's confidential and proprietary information is restricted, but Lin, as Chief Investment Officer, had access to some of this information. Moreover, Applied Research provided Lin with a laptop computer for use remotely. One purpose of providing this computer was so that Applied Research confidential information did not leave the company's network or equipment.

38. Lin was a trusted member of senior management and privy to some of Applied Research's most sensitive and confidential information, including a wealth of investment strategy information and specialized knowledge of company processes as well as its highly valuable client list. In addition, Lin had unique knowledge of all prospective client information. All of this information is critical to Applied Research's success and to maintaining its position in the industry. Lin was among only a handful of individuals with access to some of this non-public information.

**C. <u>Lin's Unlawful Scheme and Misappropriation of Secret Information</u>**

39. While he served as Chief Investment Officer at Applied Research, Lin concocted an unlawful scheme to usurp corporate opportunities away from the company. This scheme (which

Lin and Alpha carried out) involved stealing Applied Research's confidential information, and using that information to start his own wholly-owned competing firm (Alpha) offering services which were to directly compete with those offered by Applied Research, namely the provision of investment advisory and portfolio management services.

40. On January 6, 2022, without prior notice, Lin advised Applied Research of his immediate resignation. At that time, Applied Research was unaware that Lin had been stealing company confidential information in the preceding weeks and months, and carrying out a scheme to solicit and retain company clients. Accordingly, Applied Research requested that Lin temporarily delay his resignation, so that terms would be discussed and an orderly transition could be planned.

41. Lin refused the Applied Research's request.

42. Applied Research subsequently discovered that both prior to and after Lin's resignation, he remotely accessed Applied Research's servers and downloaded or otherwise transferred elements of Applied Research's Confidential Information to cloud-based storage locations, which were under Lin's exclusive custody and control. Lin had no legitimate business reason to transfer such files. In addition, shortly before his departure, Lin made an unusual request of Applied Research's head equity trader Nancy Legouffe: he asked for all client statements. There was no reason for Lin to make this request other than in furtherance of his scheme as described herein.

43. Specifically, Lin stole certain Applied Research confidential information and trade secrets to which he had extensive access, including:

- Applied Research's client list;

- Applied Research's detailed client data, including but not limited to personal and/or institutional information, including contact information, trading profile and objectives, investment history and investment account composition;

- Applied Research's proprietary portfolio models, client portfolios, client contracts, leads, consultants and investment gatekeepers, client contact information, business contacts, suppliers, books and records, transaction records, marketing presentation, board material, client statements since inception, account attribution, analyst portfolios, and client contracts;

44. On the date *prior* to his resignation, Lin accessed and downloaded to a personal cloud account a document entitled "Total Return (USD and CAD) as of 2021.11.20," representing the performance of Applied Research's strategies as of that date.

45. On the date *after* his resignation alone (but before Applied Research took possession of Lin's company-owned electronic devices), Lin logged into Applied Research systems and downloaded the following documents to a personal cloud account and/or sent to himself *via* a personal email account, which was open on Lin's laptop at the time:

- A document entitled "ARI.General Presentation.2021.12.02." This document consists of a detailed presentation of Applied Research, its assets under management, investment strategy, detailed returns, inclusive of its performance by sector and geographic region, as its portfolio model and attribution details; and

- A document entitled "Executed—Applied Research-CTPF Sub Adv Agmt (1-2021)". This is the recently-executed sub-advisory agreement between Applied Research and investment manager Attucks Asset Management LLC in relation to the management of funds related to the Public School Teachers' Pension and Retirement Fund of Chicago.

46. These documents are not public. To the contrary, they contain highly sensitive information that is critical to Applied Research's business. Lin had no right to use, or keep stock of these materials – which were paid for, created by, and owned by Applied Research – for his own purpose. He used these documents as a complete set of building blocks to start Alpha.

47. Moreover, even though he had used Applied Research resources to further his scheme, Lin concealed all of these facts from Applied Research and continued to represent to the company either that he was continuing to function as a loyal officer of the company, or that he was continuing to adhere to his obligations to the company.

**D. Lin's Solicitation of Applied Research Clients**

48. During the time that Lin worked at Applied Research, the company's assets under management grew from less than $1 million to over $1.2 billion.

49. Both prior to and following his departure, Lin – through Alpha – utilized the stolen company confidential and proprietary information to solicit numerous existing Applied Research clients to move their investments to Alpha. The first departing client (and Applied Research's largest client) advised Applied Research within 24 hours of Lin's departure, indicating that the solicitation had commenced long before.

50. During these discussions with Applied Research clients, Lin made numerous false statements, including that his departure was due to Applied Research's refusal to grant him equity. There was no such refusal.

51. In addition, Lin falsely informed Applied Research clients that the proprietary company processes and investment strategies were "his."

52. As a result of Lin's illegal solicitation of Applied Research clients and his attendant misrepresentations, Lin and Alpha procured more than 90% of Applied Research's managed assets, and thus, the fees and profits that flow from those accounts.

53. In addition, Lin and Alpha also illegally used the stolen Applied Research confidential and proprietary information to successfully solicit potential clients that were already

in Applied Research's pipeline. These were corporate opportunities belonging to Applied Research, to which Lin and Alpha had no right to solicit.

**FIRST CAUSE OF ACTION**
**(Breach of Contract)**

54. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

55. As a condition of his employment, Lin agreed to comply with Applied Research's Employee Handbook. Lin acknowledged receipt of same, and in fact attended a training session on the contents of the Handbook.

56. As such, Lin was obligated to comply with the terms contained in the Handbook. The Handbook, thus, constituted a valid and binding contract between the parties.

57. Lin breached the contract by, *inter alia*, (a) diverting and usurping corporate opportunities away from Applied Research; (b) soliciting Applied Research clients and inducing them to do business with Alpha; (c) improperly accessing, using, and removing Applied Research confidential and proprietary information and using it to compete directly with Applied research.

58. The breaches alleged above are material to Applied Research and are continuing.

59. Applied Research fully performed its obligations under the contract.

60. As a direct result of Lin's breach of contract, Applied Research has suffered damages in an amount to be determined at trial, including but not limited to those resulting form lost revenues and profits as a result of Lin's actions.

**SECOND CAUSE OF ACTION**
**(Breach of Fiduciary Duty)**

61. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

62. As Chief Investment Officer at Applied Research, Lin occupied a position of trust and confidence with the company.

63. By virtue of this role, he owed a fiduciary duty of loyalty to Applied Research.

64. Lin breached his fiduciary duties owed to Applied Research by, *inter alia*: (a) usurping the corporate opportunities of Applied Research; (b) directly competing with Applied Research, while still employed by Applied Research; (c) using Applied Research resources to facilitate this improper competition; (d) improperly accessing, using, and removing confidential and proprietary information belonging to Applied Research and using them to compete directly with the company; (e) soliciting customers and vendors of Applied Research to do business with entities either controlled by or affiliated with Lin; and (f) misappropriating, improperly using and failing to protect the confidential information of Applied Research.

65. Lin carried out all of these breaches of fiduciary duty listed above in secrecy and without the knowledge or consent of Applied Research.

66. As a fiduciary, Lin should have disclosed and obtained consent for each of these acts (to which Applied Research never agreed).

67. By engaging in the acts described above, Lin misused his position of trust and confidence and furthered his own interests and those of Alpha at the expense of Applied Research, and therefore breached his fiduciary duties to the company.

68. As a direct result of Lin's breach of his fiduciary duties, Applied Research has suffered damages in an amount to be determined at trial.

69. Lin engaged in an egregious, malicious, willful and wanton manner, and in bad faith when committing the acts and omissions alleged above. As a result, Applied Research is entitled to punitive damages.

**THIRD CAUSE OF ACTION**
**(Breach of Duty of Loyalty)**

70. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

71. As Applied Research Chief Investment Officer, Lin had an undivided duty of loyalty to the company.

72. Lin breached his duty of loyalty to Applied Research by, *inter alia*: (a) usurping the corporate opportunities of Applied Research; (b) directly competing with Applied Research while still employed by the company; (c) using the resources of Applied Research to facilitate this improper competition; (d) improperly accessing, using, and removing Applied Research confidential and proprietary information and using it to compete directly with Applied Research; (e) soliciting clients of Applied Research to do business with Alpha; and (f) misappropriating, improperly using and failing to protect the confidential information of Applied Research with which Lin was entrusted, much of which occurred while Lin was still Chief Investment Officer of the company.

73. Lin further breached his duty of loyalty by deliberately taking actions to damage the reputation of Applied Research, thereby damaging the company's relationships with clients and prospective clients;

74. As the duty of loyalty includes a duty to guard and not misuse an employer's confidential and trade secret information, Applied Research has been and continues to be materially, immediately, and irreparably injured by Lin's wrongful conduct.

75. As a direct resolute of Lin's conduct, Applied Research has suffered damages in an amount to be determined at trial, including but not limited to compensation that was paid to him by the company.

76. Lin acted in an egregious, malicious, willful, and wanton manner, and in bad faith when committing the acts and omissions alleged above. As a result, Applied Research is entitled to punitive damages.

**FOURTH CAUSE OF ACTION**
**(Unfair Competition)**

77. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

78. The acts described above constitute unfair competition in violation of the law of the State of New York. The acts include, *inter alia*: (a) breach of contract; (b) breach of fiduciary duty; (c) breach of the duty of loyalty; (d) tortious interference; (e) conversion; and (f) misappropriation of trade secrets.

79. Applied Research invested substantial time, skill, and money in developing its trade secrets and confidential business materials and its client contacts and goodwill.

80. Lin misappropriated an unlawfully used Applied Research's property by: (a) diverting and usurping Applied Research's corporate opportunities; (b) relying on Applied Research's confidential business documents and information about the company's business and products to compete with Applied Research while serving as Chief Investment Officer at the company; and (c) soliciting Applied Research's existing customers and business partners.

81. Such actions were without the authorization or consent of Applied Research.

82. Lin's actions were taken with bad faith or intent to injure Applied Research's business, including its right to enforcement of its contracts and preservation of its legitimate business interests, and to seek an unfair advantage in competing with Applied Research.

83. Lin's conduct constitutes unfair competition.

84. As a direct result of Lin's unfair competition, Applied Research has suffered damages in an amount to be determined at trial, including, but not limited to those resulting from lost revenues and profits as a result of the usurpation of corporate opportunities against Applied Research.

85. Lin acted in an egregious, malicious, willful and wanton manner, and in bad faith. As a result, Applied Research is entitled to punitive damages.

**FIFTH CAUSE OF ACTION**
**(Tortious Interference With Business Relations)**

86. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

87. As the Applied Research's Chief Investment Officer, Lin had full knowledge of the existence of a business relationship between Applied Research and each of its clients.

88. Despite knowledge of the aforementioned, Lin has interfered and continues to interfere with Applied Research's business relationships with its clients.

89. Lin's acts were and are intentional and carried out for the purpose of disrupting Applied Research's relationships with its clients.

90. As a direct result of Lin's conduct, Applied Research has suffered damages in an amount to be determined at trial.

91. Lin has acted in an egregious, malicious, willful and wanton manner, and in bad faith when committing the acts and omissions alleged above. As a result, Applied Research is entitled to punitive damages.

**SIXTH CAUSE OF ACTION**
**(Tortious Interference With Prospective Business Relations)**

92. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

93. Upon information and belief, Applied Research has prospective business relationships with clients and investors that, absent Lin's interference, would have resulted in contractual and actual business relationships between them.

94. Lin used unfair, illegal, and improper means to interfere with Applied Research's potential and actual contractual business relationships, and continues to do so.

95. As a direct result of Lin's conduct, Applied Research has suffered damages in an amount to be determined at trial.

**SEVENTH CAUSE OF ACTION**
**(Misappropriation of Trade Secrets)**

96. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

97. Applied Research possesses trade secrets including, but not limited to, the company's client data, client lists, investment strategies, investment processes, portfolio models, client contracts, investment history, and investment account composition (the "Trade Secrets").

98. The Trade Secrets give Applied Research a significant advantage over its existing and would-be competitors, an advantage that would be lost if the Trade Secrets became known to the public or to Applied Research's competitors.

99. The Trade Secrets derive independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from their disclosure or use.

100. Applied Research has made reasonable efforts to preserve the confidentiality of its Trade Secrets, including designating certain information as confidential, requiring employees to sign confidentiality agreements, and restricting access to such information and providing company issued computers to employees including Lin so that Trade Secrets remains on internal devices and networks.

101. Lin had knowledge of, and access to, Applied Research's Trade Secrets.

102. Lin was and is under a duty both to keep Applied Research's Trade Secrets confidential, and not to use, exploit or divulge such information other than for the benefit of Applied Research and with its authorization.

103. Lin and Alpha misappropriated Applied Research's Trade Secrets for their own gain, without regard to Applied Research's rights, and without compensation, permission, or license, including the disclosure and/or use of the Trade Secrets to directly compete with Applied Research.

104. Lin's conduct was, is, and remains willful and wanton, and taken with blatant disregard for Applied Research's valid and enforceable rights.

105. Lin has refused to return Applied Research's confidential and proprietary information and Trade Secrets, despite due demand.

106. As a result of Lin's wrongful misappropriation of Applied Research's Trade Secrets, Applied Research has been and continues to be materially, immediately, and irreparably injured by Lin's continued wrongful conduct.

107. As a direct result of Lin's conduct, Applied Research has suffered damages in an amount to be determined at trial.

**EIGHTH CAUSE OF ACTION**
**(Violation of the Computer Fraud and Abuse Act,**
**18 U.S.C. § 1030(a)(2)(A); 18 U.S.C. § 1030(a)(2)(C); and, 18 U.S.C. 1030(a)(4))**

108. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

109. At all relevant times, the Applied Research computer issued to Lin (the "Company Computer") was a highspeed data processing device connected to the internet and performing logical, arithmetic and other storage functions including data storage facility and communications facility directly related to its operation and, as such, is a "computer" as defined under 18 U.S.C. § 1030(e)(1). Similarly, each of the other Applied Research owned company computers and corporate data and email servers utilized by Applied Research and its employees are also high-speed data processing devices connected to the internet performing logical, arithmetic and other storage functions including data storage facility and communications facility directly related to their operation, and as such, are "computers" as defined under 18 U.S.C. § 1030(e)(1).

110. At all relevant times, the Company Computer, as well as each of the other Applied Research owned company computers and corporate data and email servers utilized by the company and its employees were "protected computers" used in commerce as defined under 18 U.S.C. § 1030(e)(2).

111. Lin intentionally accessed, with an intent to defraud, the aforesaid "protected computers" without authorization or otherwise exceeded his authorized access in order to obtain information belonging to Applied Research, which he was not entitled to.

112. Lin used his unauthorized illegal access to obtain and misuse information and records that were personal and confidential and of a financial nature to Applied Research, which he was not entitled to.

113. At all relevant times, Applied Research was an is an investment advisor registered with the Securities and Exchange Commission.

114. Lin was able to secure unauthorized access when he misused his position as Chief Investment Officer of Applied Research, and by false pretenses gained the access to Applied Research confidential information, which he then transmitted to his personal computer and to third parties including but not limited to Alpha, all to further Lin's illicit plans to compete with Applied Research.

115. Lin used his unauthorized access to obtain and misuse Applied Research's confidential and proprietary information to which he was not entitled, including the Trade Secrets.

116. As a direct and proximate cause of Lin's wrongful actions, Applied Research has been and will continue to be severely and irreparably injured, including through the misappropriation of confidential and proprietary information and Trade Secrets, which could have been commercialized, and lost revenues and profits as a result of Lin's unauthorized competition, and diversion of corporate opportunities. The aggregate damage caused to Applied Research during a one-year period as a result of these injuries is in excess of $5,000 and in an amount to be determined at trial. Accordingly, Applied Research is entitled to compensatory damages, reasonable attorneys' fees and costs, as well as equitable relief.

**NINTH CAUSE OF ACTION**
**(Alter Ego and Agency Liability)**
**Against Alpha**

117. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

118. At all relevant times, Alpha was wholly owned by Lin. As such, Lin exercised dominion and control over Alpha and its assets, operations, and activities for his own personal gain and benefit, to perpetrate the above wrongdoing upon Plaintiff.

119. Upon committing the various illegal acts delineated above, Lin used his company, Alpha, to solicit and procure Applied Research's corporate opportunities. Alpha has, thus, been enriched by Lin's breaches and thefts.

120. At all relevant times, upon information and belief, Defendants failed to observe important corporate formalities and commingled their assets, operations, activities, and management such that Lin and Alpha have no separate existence.

121. At all relevant times, all of Alpha operations and assets were under the sole control of Lin.

122. Upon information and belief, there is such a unity of interest, ownership, control, and lack of corporate separateness among the Defendants, that they must all be treated as one and held vicariously liable for all of Lin's obligations to the Plaintiff.

123. After having used his position as Applied Research's Chief Investment Officer to perpetrate the above wrongdoing on Plaintiff, Lin used his position as sole owner at Alpha to direct the benefit of his wrongdoing to Alpha.

124. At all relevant times, Lin dominated, controlled, and commingled the assets, operations, activities and management of Alpha to such an extent that any adherence to the fiction of their separate existence would permit the abuse of a corporate entity and cause and promote injustice by allowing Alpha to evade liability or veil assets that should, in equity, be used to satisfy the amounts due to Plaintiffs for the wrongdoing delineated above.

125. At all relevant times, Defendants were alter egos of one another because there was and is such a unity of interest, ownership, and control that the Defendants must all be treated as one to prevent the inequitable result of permitting Alpha to profit from the wrongdoing perpetrated on Plaintiff.

126. Additionally, pursuant to the foregoing, any corporate veil between Lin and Alpha must be pierced to hold each and every Defendant vicariously liable for all obligations that flow from the wrongdoing described above. Doing so is necessary to prevent the wrongs and injustice perpetrated upon Plaintiff by Lin's acts described above.

127. As a result of the foregoing, Plaintiff is entitled to a declaration that Defendants each be, jointly and severally, liable for all obligations of Lin to the Plaintiff based on alter ego, vail piercing, or agency liability.

**TENTH CAUSE OF ACTION**
**(Aiding and Abetting Breach of Contract, Breach of Fiduciary Duty, Breach of Duty of Loyalty, Unfair Competition, Tortious Interference, Misappropriation of Trade Secrets, and Violation of the Computer Fraud and Abuse Act)**
***Against Alpha***

128. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

129. Alpha was founded by Lin for the express purpose of competing with Applied Research, as part of Lin's scheme to steal proprietary and Trade Secret information belonging to Applied Research, and to leverage that information to illegally compete with Applied Research.

130. As such, Alpha induced Lin to steal Applied Research's confidential information and Trade Secrets delineated above, and provide it to Alpha.

131. Once armed with Applied Research's confidential information and Trade Secrets, Alpha aided and abetted Lin in soliciting Applied Research's clients and prospective clients,

usurping its rightful corporate opportunities, and procuring substantial income that was rightfully owed to Applied Research.

132. With full knowledge of the terms of Lin's obligations to Applied Research, Alpha knowingly induced and substantially assisted Lin in breaching those obligations described above, by facilitating Lin's misappropriation of Applied Research confidential, proprietary, and Trade Secret information.

133. In fact, Lin would not have been able to solicit Applied Research clients and opportunities if not for the services and products that Alpha offered, and the corporate vehicle that it provided.

134. Armed with Applied Research's confidential and proprietary Trade Secret information and Lin, Alpha convinced numerous Applied Research clients and potential clients to cut ties with Applied Research and move their accounts to Alpha. In fact, Lin would not have been able to solicit these clients without the backing and support of Alpha, and the services and products it could provide in the place and stead of Applied Research.

135. Thus, Alpha knowingly induced and participated in Lin's wrongful acts delineated in the First, Second, Third, Fourth, Fifth, Sixth, Seventh, and Eighth causes of action above.

136. As a direct and proximate result of Alpha's actions, Applied Research has been damaged in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court enter judgment in his favor and against Defendants for the following relief:

A. An award of damages against Defendants, in an amount to be determined at trial, plus interest, to compensate for all monetary and/or economic damages;

B. An award of disgorgement against all Defendants, of the fees, commissions, and salary Lin and Alpha improperly received by way of the misconduct identified above.

C. A declaration against the Defendants finding that the Defendants each be, jointly and severally, liable for the wrongdoing described above, based on alter ego, veil piercing, or agency liability.

C. An award of punitive damages in an amount to be determined at trial;

D. Prejudgment interest on all amounts due;

E. An award of Plaintiff's reasonable attorneys' fees and costs; and

F. Such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues of fact and damages stated herein.

Dated: August 19, 2022
New York, New York

DAVIDOFF HUTCHER & CITRON LLP,

By: [signature]
Larry Hutcher
William H. Mack
605 Third Avenue
New York, New York 10158
(212) 557-7200
Fax (212) 286-1884
LKH@dhclegal.com
WHM@dhclegal.com
*Attorneys for Plaintiff*