UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                                 :

APPLIED RESEARCH INVESTMENTS,    :
LLC,                                                    :
                                Plaintiff,   :
                                                       :                              22-CV-7100 (VSB)
                - against -                     :
                                                       :                      **OPINION & ORDER**
                                                       :
MARK LIN and ALPHA LAB ASSET      :
MANAGEMENT INC.,                          :
                                                       :
                              Defendants.  :
                                                       :
-----------------------------------------------------------X

Appearances:

Benjamin Samuel Noren
Matthew Robert Yogg
William Hynes Mack
Davidoff Hutcher & Citron LLP
New York, NY
*Counsel for Plaintiff*

Christopher John Major
Richard Joseph Jancasz
Meister Seelig & Fein PLLC
New York, NY

David Eric Ross
John Bernard Fulfree
Morrison Cohen LLP
New York, NY
*Counsels for Defendants*

VERNON S. BRODERICK, United States District Judge:

        Before me is the motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(2), filed by Defendants Mark Lin ("Lin") and Alpha Lab Asset Management Inc. ("Alpha") (together, "Defendants"). (Doc. 23.) Because Plaintiff establishes personal jurisdiction over

Lin, but not Alpha, Defendants' motion to dismiss GRANTED IN PART and DENIED IN PART.

I. **Factual Background**[1]

Plaintiff is a Delaware limited liability company headquartered in New York, New York that provides investment advisory and portfolio services. (Doc. 15 ¶¶ 5, 42.) Alpha is a Canadian corporation, founded by Lin, that provides the same services. (*Id.* ¶ 42.) Lin is a Canadian citizen who resides in Montreal, Quebec, Canada. (*Id.* ¶ 6.) From April 2017 until his sudden resignation in January 2022, Lin served as the Chief Investment Officer of Plaintiff and as the Chief Compliance Officer of Plaintiff's Canadian affiliate. (*Id.* ¶¶ 3, 4.)

While employed by Plaintiff, Lin received Plaintiff's Employee Handbook (the "Handbook") which included policies related to confidential and proprietary information. (*Id.* ¶¶ 25–28.) The Handbook also included a provision stating that for 24-months following an employee's termination, they may not directly or indirectly solicit Plaintiff's clients. (*Id.* ¶ 31.) Although Plaintiff had a policy of requiring its employees to sign an acknowledgement of the non-disclosure policies that were appended to the Handbook, (*id.* ¶ 30), in 2021, Lin refused to sign the acknowledgment, "claiming that he was the Chief Compliance Officer of the Applied Research's Canadian affiliate, and he had not had an opportunity to review the policy," (*id*).

During Lin's employment with Plaintiff, he regularly communicated with and executed

---

[1] The facts contained in this section are based upon the factual allegations set forth in the amended complaint filed by Plaintiff ("Amended Complaint"), (Doc. 15), and the declarations filed by the parties in support of and opposing the motion to dismiss, (Docs. 24, 29). "Courts may consider materials outside the pleadings on a motion to dismiss for lack of personal jurisdiction without converting it into a summary judgment motion." *Johnson v. UBS AG*, 791 F. App'x 240, 241 (2d Cir. 2019). I assume the allegations in the Amended Complaint to be true in considering the motion to dismiss pursuant to Federal Rule of Civil Procedure Rule 12(b)(2). *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006). Where the parties "present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor." *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 580 (2d Cir. 1993), as amended (May 25, 1993) (*Seetransport Wiking*). My reference to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

agreements with clients and customers based in New York.  (Doc. 29 ¶¶ 5–7.)  He also visited New York on at least thirteen occasions for "the purpose of performing services for the benefit of Plaintiff."  (*Id.* ¶ 8.)  These visits resulted in approximately $900 million of transactions for Plaintiff.  (*Id.* ¶ 10.)

On January 6, 2022, Lin notified Plaintiff of his immediate resignation.  (*Id.* ¶ 43.)  Plaintiff later came to learn that both prior to and after Lin's resignation, Lin used the laptop issued by Plaintiff and remotely accessed Plaintiff's "servers and downloaded or otherwise transferred elements of [Plaintiff's] Confidential Information to cloud-based storage locations, which were under Lin's exclusive custody and control."  (*Id.* ¶ 45.)  Specifically, Plaintiff accuses Lin of stealing:

- Applied Research's client list;

- Applied Research's detailed client data, including but not limited to personal and/or institutional information, including contact information, trading profile and objectives, investment history and investment account composition;

- Applied Research's proprietary portfolio models, client portfolios, client contracts, leads, consultants and investment gatekeepers, client contact information, business contacts, suppliers, books and records, transaction records, marketing presentation, board material, client statements since inception, account attribution, analyst portfolios, and client contracts;

- A document entitled "Total Return (USD and CAD) as of 2021.11.20," representing the updated performance of Applied Research's strategies as of that date;

- A document entitled "ARI.General Presentation.2021.12.02."  This document consists of a detailed presentation of Applied Research, its assets under management, investment strategy, detailed returns, inclusive of its performance by sector and geographic region, as its portfolio model and attribution details; and

- A document entitled "Executed—Applied Research-CTPF Sub Adv Agmt (1-2021)".  This is the recently-executed sub-advisory agreement between Applied Research and investment manager Attucks Asset Management

> LLC in relation to the management of funds related to the Public School Teachers' Pension and Retirement Fund of Chicago.

(*Id.* ¶¶ 46–48.)  Shortly before his resignation Lin also requested that Nancy Legouffe, Plaintiff's head equity trader, show him all client statements since inception by the Team Video Channel.  (*Id.* ¶ 45.)

Both prior to and following his departure from Plaintiff, Lin used the stolen information to benefit his company, Alpha, and solicit Plaintiff's current and potential future clients.  Eventually, "Lin and Alpha procured more than 90% of [Plaintiff's] managed assets, and thus, the fees and profits that flow from those accounts."  (*Id.* ¶ 55.)

## II.     Procedural History

Plaintiff filed its complaint on August 19, 2022.  (Doc. 1.)  Due to a filing error, the complaint was re-filed on August 22, 2022.  (Doc. 4.)  On January 4, 2023, Plaintiff filed the Amended Complaint.  (Doc. 15.)  On January 24, 2023, Defendants filed their motion to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(2).  (Doc. 23.)  Defendants filed a declaration, (Doc. 24), and a memorandum of law, (Doc. 25), in support of their motion.  On February 24, 2023, Plaintiff filed a memorandum of law, (Doc. 30), and a declaration, (Doc. 29), opposing Defendants' motion.  On March 10, 2023, Defendants filed their reply brief, (Doc. 32), and a letter motion for oral argument, (Doc. 33).

## III.    Legal Standard

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 424 (2007).  However, a "federal court faced with a 'straightforward' personal jurisdiction issue may decide the personal jurisdiction question first if resolving that issue terminates the case."

4

*Al-Ahmed v. Twitter, Inc.*, 553 F. Supp. 3d 118, 124 (S.D.N.Y. 2021) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 588 (1999))

A plaintiff opposing a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), "bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010). Where the court has chosen not to conduct an evidentiary hearing on the motion, a plaintiff need only make a prima facie showing that jurisdiction exists. *Grand River Enterprises Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005); *see also Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 167–68 (2d Cir. 2015) ("'In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists.'" (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013))). "On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the Court may look beyond the four corners of the complaint and consider materials outside the pleadings, including accompanying affidavits, declarations, and other written materials." *Astor Chocolate Corp. v. Elite Gold Ltd.*, 510 F. Supp. 3d 108, 115 (S.D.N.Y. 2020); *see also Johnson*, 791 F. App'x at 241 ("Courts may consider materials outside the pleadings on a motion to dismiss for lack of personal jurisdiction without converting it into a summary judgment motion.")

Plaintiff's "prima facie showing 'must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant.'" *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (quoting *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010)). Plaintiff's averments "must be taken as true to the extent they are uncontroverted by the defendant's" submissions. *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012) (quoting *Seetransport*

5

Wiking, 989 F.2d at 580.) If the defendant's submissions conflict with the plaintiff's averments, "all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Seetransport Wiking*, 989 F.2d at 580 (internal quotation marks omitted).

## IV. Discussion

### A. *Personal Jurisdiction*

"Personal jurisdiction may be either general or specific." *Al-Ahmed*, 553 F. Supp. 3d at 124 (citing *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016)). "General, or 'all-purpose,' jurisdiction allows a court to adjudicate any cause of action against the defendant, regardless of where it arose." *Al-Ahmed*, 553 F. Supp. 3d at 124–25. General jurisdiction exists when the defendant's contacts with the forum are "so continuous and systematic as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (alteration in original, internal quotation marks omitted). Plaintiff does not argue in its opposition that Defendants are subject to general jurisdiction in New York; therefore, I only consider whether Plaintiff has made a prima facie showing of specific jurisdiction.

Specific jurisdiction is limited to causes of action that "arise[ ] out of the defendant's activities in a state." *Al-Ahmed*, 553 F. Supp. 3d at 125 (internal quotation marks omitted). Here, Plaintiff asserts that personal jurisdiction over Lin is proper under New York's long-arm statute, N.Y. C.P.L.R. §§ 302(a)(1) and (a)(3)(ii).[2] (Doc. 30.) These sections of the New York's long-arm statute state:

---

[2] Because I find jurisdiction over Lin to be proper under N.Y. C.P.L.R. § 302(a)(1) and because Plaintiff does not assert § 302(a)(3)(ii) as a basis for jurisdiction in the Amended Complaint, I need not consider whether jurisdiction is also proper under § 302(a)(3)(ii). *See Aritomo v. Rhee*, No. 21-CV-4875 (RA), 2022 WL 17156554, at *7 (S.D.N.Y. Nov. 22, 2022) ("Because the Court has personal jurisdiction over Music Traveler pursuant to C.P.L.R. § 302(a)(1), it need not consider whether jurisdiction is also proper under § 302(a)(2).")

6

> § 302. Personal jurisdiction by acts of non-domiciliaries
>
> (a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent:
>
> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or . . .
>
> 3. commits a tortious act without the state causing injury to person or property within the state, . . . if he (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

N.Y. C.P.L.R. § 302(a)(1), (a)(3). Plaintiff further claims that it has established personal jurisdiction over Alpha as an alter ego of Lin.

### 1. New York's Long Arm Statute

"To determine the existence of jurisdiction under section 302(a)(1), a court must decide (1) whether the defendant "transacts any business in New York" and, if so, (2) whether th[e] cause of action "aris[es] from" such a business transaction." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (second alteration in original). A person transacts business in New York when they "purposefully avail[] [themselves] of the privilege of conducting activities within [New York.]" *Ehrenfeld v. Bin Mahfouz*, 9 N.Y.3d 501, 508 (N.Y. 2007) (third alteration in original) (internal quotation marks omitted).

At this stage, there are several factual disputes that must be resolved in favor of the Plaintiff. *Seetransport Wiking*, 989 F.2d at 580. During Lin's employment, he "regularly accessed Plaintiff's books and records . . . which are maintained through Plaintiff's New York City corporate headquarters."[3] (Doc. 29 ¶¶ 7, 19.) Lin violated company policies by stealing

---

[3] The parties disagree over whether Plaintiff was headquartered in New York. (*Compare* Doc. 30 at 12 *with* Doc. 32 at 2.) They also disagree over the situs of Plaintiff's books and records. Lin disputes these assertions and claims that "[t]he permanent server in the Canadian office was Plaintiff's primary server and hosted a complete set of Plaintiff's books and records." (Doc. 31 ¶ 9.) Lin further claims that "to the extent [he] ever needed to access

confidential information from Plaintiff's New York servers and using that information to start a competitor firm, Alpha, and solicit Plaintiff's clients. (Doc. 15.) Lin stole this information by downloading it from Plaintiff's New York servers both before and after he ended his employment with Plaintiff. (*Id.* ¶¶ 45–48.)

Lin argues that "Plaintiff's [First Amended Complaint] does not identify any specific conduct that allegedly occurred in New York relating to the causes of action it pleads." (Doc. 25 at 10.) Lin's argument ignores the allegations in the Amended Complaint, and is an incorrect application of the law. It does not matter that Lin was not physically in New York, because by pleading that Lin downloaded Plaintiff's confidential documents from New York servers, Plaintiff has pled Lin engaged in purposeful activity with the forum state. *See Medicrea USA, Inc. v. K2M Spine, Inc.*, No. 17 CIV. 8677 (AT), 2018 WL 3407702, at *5–6 (S.D.N.Y. Feb. 7, 2018) (the fact that defendants "connected to servers located in New York" supported a finding that personal jurisdiction existed); *Opticare Acquisition Corp. v. Castillo*, 25 A.D.3d 238, 245 (2d Dep't 2005) (defendants' "access via computer to data . . . maintained in New York" supported a finding of personal jurisdiction). "[O]ne transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (N.Y. 1988). Lin is correct that this case differs from *Opticare Acquisition Corp.* and *Medicrea*, because he was not bound by an employment contract; however, Lin's lack of employment contract does not negate jurisdiction. The existence of a contractual relationship is just one

---

Plaintiff's books and records, [he] would do so from Plaintiff's Canadian offices by logging on to Plaintiff's Canadian server." (*Id.* at ¶ 10.) Resolution of these issues must follow discovery; however, for purposes of this motion, I resolve these factual disputes in favor of Plaintiff. *Seetransport Wiking*, 989 F.2d at 580.

relevant factor to consider, and to find that a defendant was "transacting business" requires "a certain quality, rather than a specific quantity, of contacts with New York." *Navaera Scis., LLC v. Acuity Forensic, Inc.*, 667 F. Supp. 2d 369, 374 (S.D.N.Y. 2009) (internal quotation marks omitted). Accordingly, I find that Lin was transacting business in New York under N.Y. C.P.L.R. § 302(a)(1).

I also find that there is "some articulable nexus between the business transacted and the cause of action sued upon." *McGowan v. Smith*, 52 N.Y.2d 268, 272 (N.Y. 1981). Lin's conduct of downloading confidential documents from Plaintiff's New York server, both while and after he was Plaintiff's employee, is the exact conduct that Plaintiff bases its claims upon. Much like the court found in *Medicrea USA, Inc.*, "[b]ut for [defendant's] employment activities for a New York employer, whose data was located on New York servers . . . [defendant] would not have had access to the confidential information at issue in Plaintiff's breach of contract and trade secret claims." 2018 WL 3407702, at *7. Accordingly, personal jurisdiction over Lin is proper under New York's long-arm statute.

### 2. Due Process

Having found a statutory basis for personal jurisdiction, I proceed to the due process analysis, which requires that defendants have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). "Minimum contacts must have a basis in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.*, 480 U.S. 102, 109 (1987) (quoting *Burger King Corp.*

*v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

It does not offend due process to exercise personal jurisdiction over Lin. "Because CPLR 302 does not reach as far as the constitution permits, if a defendant is amenable to long-arm jurisdiction in New York, the constitutional standard is satisfied." *Artists Rights Enf't Corp. v. Jones*, No. 17 Civ. 3189, 2017 WL 3283405, at *2 (S.D.N.Y. July 18, 2017) (internal citation omitted). By downloading confidential materials belonging to a New York company, from a New York server, Lin's "conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *see also LeCroy Corp. v. Hallberg*, No. 09CIV8767, 2010 WL 3958761, at *5 (S.D.N.Y. Oct. 4, 2010) ("New York has an interest in adjudicating claims involving a New York-based company."). Lin also had additional contacts with New York, such as his thirteen visits to New York, his communications with Plaintiff's New York employees, and his transactions made on New York-based accounts. (Doc. 24 ¶ 22; Doc. 29 ¶ 4–8.) Accordingly, I do not find that asserting personal jurisdiction over Lin violates due process.

### 3. Alter Ego Jurisdiction Over Alpha

Rather than providing a basis for independent personal jurisdiction over Alpha, Plaintiff asserts that this Court has personal jurisdiction over Alpha because it is the alter ego of Lin. "In general, alter egos are treated as one entity for jurisdictional purposes." *NYKCool A.B. v. Pac. Int'l Servs., Inc.*, 66 F. Supp. 3d 385, 392 (S.D.N.Y. 2014) (cleaned up). For purposes of the alter ego analysis, "[t]he critical inquiry i[n] determining whether a corporation is a 'shell' company is whether it is being used by the alleged dominating entity to advance its own personal interests as opposed to furthering the corporate ends." *USHA Holdings, LLC v. Franchise Indian Holdings Ltd.*, 11 F. Supp. 3d 244, 266 (E.D.N.Y. 2014) (internal quotation marks omitted).

When determining whether an entity is a corporate alter ego, New York courts consider:

> the failure to observe corporate formality; inadequate capitalization; intermingling of personal and corporate funds; the sharing of common office space, address and telephone numbers of the alleged dominating entity and the subject corporation; an overlap of ownership, directors, officers or personnel; the use of the corporation as a means to perpetrate the wrongful act against the plaintiff.

*Miramax Film Corp. v. Abraham*, No. 01–cv–5202 (GBD), 2003 WL 22832384, at *8 (S.D.N.Y. Nov. 25, 2003).

Here, in support of his claim of alter ego liability, Plaintiff offers legal conclusions such as: "Defendants were alter egos of one another because there is such a unity of interest, ownership and control," (Doc. 15 ¶ 128), and "any corporate veil between Lin and Alpha must be pierced," (*id.* ¶ 129). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), as "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," *id.* at 678. Instead of factual allegations, Plaintiff makes conclusory statements based upon information and belief. (*See* Doc. 15 at ¶¶ 123, 125; Doc. 29 ¶¶ 29, 30, 31.) "A litigant cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory." *Citizens United v. Schneiderman*, 882 F.3d 374, 384 (2d Cir. 2018). Allegations made upon information and belief must be "based on factual information that makes the inference of culpability plausible." *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010). Because the Amended Complaint does not offer sufficient factual allegations to support alter ego jurisdiction, Defendants' motion to dismiss claims against Alpha for lack of personal jurisdiction is GRANTED.

### B. *Leave to Amend*

Plaintiff requests that "[i]n the unlikely event that the Court grants any portion of Defendants' motions . . . it should only dismiss claims without prejudice, with leave to replead to remedy any deficiencies the Court finds." (Doc. 30 at 24.) Rule 15(a)(2) of the Federal Rules of Civil Procedure requires that courts grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). "'[I]t is within the sound discretion of the court whether to grant leave to amend.'" *In re Alcon S'holder Litig.*, 719 F. Supp. 2d 280, 281 (S.D.N.Y. 2010) (quoting *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994)). Generally, when courts grant a motion to dismiss, amendments are favored because they "tend to facilitate a proper decision on the merits." *Sokolski v. Trans Union Corp.*, 178 F.R.D. 393, 396 (E.D.N.Y. 1998) (internal quotation marks omitted). Thus, a plaintiff is typically granted leave to amend in the absence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed . . . or futility of amendment." *Alcon*, 719 F. Supp. 2d at 281–82 (cleaned up).

It is possible that Plaintiff could cure the deficiencies of his Amended Complaint and plead facts that establish alter ego jurisdiction over Alpha. Accordingly, I grant Plaintiff leave to replead the Amended Complaint. Any amended pleading must be filed within twenty-one (21) days of the date of this Opinion & Order.

### V.   Conclusion

For the reasons stated above, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. Because I do not find it necessary, Defendants' motion for oral argument, (Doc. 33), is DENIED. Alpha is hereby DISMISSED as a defendant, however all claims against Lin survive. Plaintiff is ordered to file any amended pleading within twenty-one (21) days of the

date of this Opinion & Order.

The Clerk of Court is respectfully directed to close the motions at Docs. 23 and 33.

SO ORDERED.

Dated: September 27, 2023
     New York, New York

*Vernon Broderick*
Vernon S. Broderick
United States District Judge